United States District Court
Southern District of Texas
**ENTERED**
June 27, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| *IN RE*: INTERCONTINENTAL | § | |
| TERMINALS COMPANY, LLC | § | No. 4:19-CV-01460 |
| DEER PARK FIRE LITIGATION | § | |
| | § | |
| NSK LTD. AND NSK | § | |
| CORPORATION | § | |
| *Plaintiffs,* | § | No. 4:22-CV-03910 |
| | § | |
| v. | § | |
| | § | |
| INTERCONTINENTAL | § | |
| TERMINALS COMPANY, LLC | § | |

## <u>MEMORANDUM & OPINION</u>

This is a business disparagement case.[1]  Pending before the Court is Defendant

Intercontinental Terminals Company LLC's ("ITC") motion to dismiss Plaintiffs

NSK Ltd. and NSK Corporation's (together, "NSK") complaint. Def.'s MTD, ECF

No. 10. In this action, NSK alleges that ITC disparaged NSK's business when it

released a root cause analysis report (the "Report") which concluded that a latent

defect in NSK manufactured ball bearings caused a fire at ITC's Deer Park facility

---

[1] On June 20, 2023, based on the parties' consent, this case was deconsolidated from *In re ITC*, Case No. 4:19-cv-01460 and transferred to this Court to conduct all further proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 9. Although the motions addressed here were originally filed in *In re ITC*, Case No. 4:19-cv-01460, before deconsolidation, all docket numbers refer to corresponding docket numbers in *NSK Ltd. et al. v. Intercontinental Terminals Company, LLC*, Case No. 4:22-CV-03910.

from March 17, 2019 to March 20, 2019 (the "ITC Fire"). Orig. Compl., ECF No. 1 at ⁋ 79.

The issue before the Court is whether NSK's complaint should be dismissed for failing to state a claim. ECF No. 10. In its complaint, NSK advances claims for business disparagement and civil conspiracy based on its business disparagement claim. After thoroughly considering NSK's complaint, the briefing,[2] and the applicable law, the Court dismisses NSK's complaint because it fails to state a claim. NSK's business disparagement claim fails to plead sufficient facts to satisfy the publication and special damages elements of the claim. Further, ITC's publication of the Report to plaintiffs in actions alleging harm from the ITC Fire (the "ITC Fire Plaintiffs") is subject to judicial privilege and not actionable. Therefore, to the extent NSK's business disparagement claim is based on ITC's publication of the Report to the ITC Fire Plaintiffs, it is dismissed with prejudice. Finally, because NSK's civil conspiracy claim is based on the underlying business disparagement tort, it too is dismissed.

## I.    BACKGROUND

ITC's Deer Park Facility is comprised of tank farms for the storage of chemicals. ECF No. 1 at ¶ 10. On March 17, 2020, a fire originated at or near the manifold of one of these tanks—Tank 80-8. *Id.* At the time, Tank 80-8 was being

---

[2] NSK filed an opposition, ECF No. 11, and ITC filed a reply, ECF No. 12.

used to store naptha, a highly flammable liquid hydrocarbon mixture. *Id.* ¶ 11. Ultimately, the fire burned until March 20, 2019 and consumed a total of 11 tanks. *Id.* ¶ 30.

In April 2019, ITC retained Exponent, Inc. ("Exponent") to investigate the cause of the fire and help ITC prepare the Report. *Id.* ¶ 32. The Report was completed on December 3, 2020. *Id.* ¶ 33. It concluded that (1) the fire "was caused by a latent defect in the NSK Ltd. Model 5313 outboard bearing in the Tank 80-8 pump power end" and (2) "Individual balls within the outboard bearing contained voids that compromised their integrity and resulted in premature failure." *Id.* ¶ 34. NSK alleges that ITC published the Report to (1) individuals and businesses, claiming that they were harmed as a result of the ITC Fire and (2) a number of government entities. *Id.* ¶¶ 37-38. According to NSK, the Harris County Fire Marshall's Office ("HCFMO") produced a copy of the Report to them in response to a public records request. The HCFMO released a "Final Report" regarding the ITC Fire in November 2019. *Id.* ¶ 38.

NSK alleges that numerous aspects of ITC's investigation and the Report were flawed. For example, NSK alleges that the Report fails to address alternative causes of the ITC Fire that were known to ITC. *Id.* ¶ 59. Further, the Report does not include any discussion of potential causes of the voids in ITC's bearing balls other than the latent defect. *Id.* ¶ 51. According to NSK, the lack of discussion is concerning

because the ITC and Exponent investigation team was aware of an article that described voids in bearing balls forming during operation and not during their manufacture. *Id.* ¶¶ 63-65. As a result of these, and other issues, NSK alleges that the Report's conclusion that NSK's ball bearings suffered from a latent defect that caused the ITC Fire was made with knowledge of its falsity or reckless disregard for the truth. *Id.* ¶ 88. According to NSK, the infirmities with the investigation and the Report were done intentionally "in an attempt to shift blame" from ITC. *Id.* ¶ 87.

Following the Report's publication, thousands of individuals and businesses located around ITC's Deer Park facility filed claims for damages against NSK. ECF No. 1 at ¶ 7. Many ITC Fire Plaintiffs also sued a business partner of NSK's, Applied Industrial Technologies, Inc. ("Applied"). NSK claims that the publication of the Report caused it to suffer special economic damages in the form of defense costs, expert fees, reputational harm, potential indemnification exposure to Applied, *id.* at ¶ 84, and less favorable insurance terms, *id.* at ¶ 44.

## II.   THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs.'" *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Boudreaux*

5

*v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021). Importantly, the court should not evaluate the merits of the allegation but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR BUSINESS DISPARAGEMENT.

To state a claim for business disparagement, the plaintiff must sufficiently allege: (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *7 (N.D. Tex. Aug. 12, 2021). ITC moves to dismiss NSK's business disparagement claim because it fails to plead the last three elements of the tort. NSK responds that ITC's motion should be denied because it is not required to plead the publication was without privilege and it sufficiently pleaded all the elements of its business disparagement claim. The Court addresses each element of NSK's business disparagement claim in turn.

### A. NSK Failed To Plead Publication With The Required Specificity.

To state a claim for business disparagement, a plaintiff is "required to plead that statements were published." *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015). Moreover, while a claim for

6

business disparagement is not subject to the heightened pleading requirements of Rule 9(b), the pleadings must be sufficiently detailed to the extent necessary to enable the defendant to respond. *See Cheatam v. JCPenney Co, Inc*, No. 1:16-CV-00072-MAC, 2016 WL 4718959, at *5 (E.D. Tex. July 13, 2016), *report and recommendation adopted sub nom. Cheatam v. Jcpenney Co.*, No. 1:16-CV-72, 2016 WL 4703844 (E.D. Tex. Sept. 8, 2016). Courts have found complaints deficient where they do not include details regarding the publication of the allegedly disparaging statements. *See Teel*, 2015 WL 9478187, at *6 (dismissing complaint where complaint "fail[ed] to include exactly when, where, and to whom the statements were published"). For example, in *Redden v. Smith & Nephew, Inc.*, the court dismissed the plaintiff's complaint for failing to specify who made the defamatory statements, to whom the statements were made, the actual words of the defamatory statements, and the specific time and place of publication. No. 3:09-cv-1380, 2010 WL 2944598, at *5 (N.D. Tex. 2010).

Here, NSK's complaint is devoid of specifics regarding ITC's alleged publication of the Report. NSK alleges only that the Report was published to "thousands of individuals and businesses claiming personal injury, property damage, or other types of damage following the fire" and "a number of government entities." ECF No. 1 at ¶¶ 37-38. Further, the sole governmental entity NSK identifies is only alleged to have *possessed* the Report, not that ITC *published* the Report to it. *Id.* ¶ 38.

Such conclusory allegations are not sufficient to allow ITC to respond to NSK's complaint.

Accordingly, NSK's pleading of the publication element is deficient. *Traxxas, L.P. v. Dewitt*, No. 4:14CV733, 2015 WL 7777986, at *3 (E.D. Tex. Dec. 2, 2015) (dismissing defamation claim where party failed to identify the time and place of allegedly defamatory statement).

### B. NSK Sufficiently Pleaded Malice.

ITC argues that NSK failed to plead that the allegedly disparaging statements in the Report were made with malice. According to ITC, the allegations in NSK's complaint do not plead facts sufficient to establish that ITC knew the Report's conclusion that the ITC Fire was caused by a latent defect in NSK's ball bearings was false or that ITC was aware the conclusion was likely false. ECF No. 10 at 14-15. In response, NSK contends that it met the standard for pleading malice because its complaint alleges that the investigation was faulty, the Report failed to include information undermining its conclusion, and ITC acted inconsistently with the results of the investigation. ECF No. 11 at 13-14. The Court agrees with NSK. It has plausibly pleaded that ITC published the Report with malice.

Under Texas law, a business disparagement defendant may only be held liable if "'he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in

an unprivileged fashion.'" *Pseudonym v. E. Houston Reg'l Med. Ctr.*, No. 4:17-CV-3277, 2018 WL 2392200, at *6 (S.D. Tex. Apr. 25, 2018), *report and recommendation adopted*, No. 4:17-CV-3277, 2018 WL 2390129 (S.D. Tex. May 25, 2018) (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). NSK alleges that ITC published the Report with knowledge that it was false or reckless disregard for the truth. ECF No. 1 at ¶ 82.

In support of NSK's malice pleading, it argues that deficiencies with ITC's investigation of the ITC Fire indicate that ITC acted with, at a minimum, reckless disregard for the truth. ECF No. 11 at 14-15. As alleged in NSK's complaint, ITC's behavior appears to go beyond a faulty investigation. NSK points to the fact that none of the ITC employees that were interviewed in connection with the investigation identified NSK's ball bearings as the cause of the fire. ECF No. 1 at ¶ 58. Furthermore, ITC's investigators were aware that the voids in the NSK ball bearings could have formed during use, and, therefore, were not necessarily the product of a manufacturing defect. *Id.* ¶¶ 63-64. Despite this information, and its conclusion that NSK was at fault, ITC made no inquiry with NSK regarding its manufacturing processes or potential issues with the ball bearings before issuing its Report. *Id.* ¶¶ 67-69. Therefore, this is not a case where ITC simply failed "to investigate the facts before speaking as a reasonably prudent person would." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) (finding that a failure to investigate was

not sufficient to show malice). Rather, as NSK alleged, and drawing every reasonable inference in NSK's favor, ITC purposefully avoided the truth. *See Weber v. Fernandez*, No. 02-18-00275-CV, 2019 WL 1395796, at *18 (Tex. App. Mar. 28, 2019, no pet.).

NSK's allegation that ITC took actions inconsistent with the Report's conclusions further bolsters this conclusion. Specifically, ITC continued to use NSK's bearings after completing the Report which concluded that a latent defect in them caused the ITC Fire. ECF No. 1 at ¶ 71. NSK alleges that, if ITC "believe[d] a manufacturing defect[3] in an NSK bearing caused the fire," it would not have continued using the in other pumps. ECF No. 11 at 15-16.[4] A reasonable inference from ITC's continued use of the allegedly defective ball bearings is that it was aware of the Report's probable falsity or seriously doubted its truth. *Darby v. New York Times Co.*, No. 07-12-00193-CV, 2014 WL 818614, at *7 (Tex. App. Feb. 26, 2014, pet. denied) (quoting *Doubleday & Co. v. Rogers*, 674 S.W.2d 751, 756 (Tex.

---

[3] NSK claims this inference is further bolstered because ITC "discontinued its use of butane injection operations" after the ITC Fire, indicating that ITC believed those operations were the true cause of the fire. ECF No. 11 at 16. However, because NSK's complaint does not allege that NSK discontinued the use of butane injection operations, the Court does not consider those allegations in determining if NSK pleaded malice. *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 878 (W.D. Tex. 2019) ("because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.").

[4] The Report concludes that SK's ball bearings had a latent defect, not necessarily a manufacturing defect. "A latent defect is one that is not discoverable by a reasonably prudent inspection." *Brown v. Caldwell & Fam. Custom Homes, Inc.*, No. 02-11-00490-CV, 2012 WL 4662544, at *3 (Tex. App. Oct. 4, 2012, no pet.) (citing *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983)).

1984)).

Accordingly, the Court concludes that NSK has sufficiently pleaded malice.

### C. Publication Of The Report To ITC Fire Plaintiffs Was Privileged.

The final ground ITC advances for dismissing NSK's business disparagement claim is that its publication of the Report was privileged. According to ITC, its publication of the Report to ITC Fire Plaintiffs is protected by judicial privilege and publication to the Texas Commission on Environment Quality ("TCEQ") is absolutely privileged. ECF No. 10 at 7-12. In response, NSK argues privilege is an affirmative defense that ITC bears the burden of providing. ECF No. 11 at 17. In addition, NSK argues that ITC's publication is not privileged. *Id.* at 21-22.

The Court agrees that privilege is an affirmative defense to the business disparagement claims and NSK does not have to burden of pleading lack of privilege. *Cisco Systems, Inc. v. Mushkin, Inc.*, Civil Action No. 3:20-CV-2588-K, 2021 WL 3550515, at *9 (N.D. Tex. Aug. 11, 2021); *Teel*, 2015 WL 9478187, at *3. Nonetheless, dismissal pursuant to Rule 12(b)(6) is appropriate where a successful affirmative defense is apparent from the pleadings. *Cisco*, 2021 WL 3550515, at *9. The privilege defense is apparent with respect to ITC's publication of the Report to ITC Fire Plaintiffs. ECF No. 1 at ¶ 37. The Court finds that judicial privilege protects this publication. However, the privilege is not apparent with respect to ITC's publication of the Report to government entities. *Id.* ¶ 38.

Under Texas law, "'[c]ommunications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made.'" *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (*James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). "[D]ue course of a judicial proceeding" may include communications "in serious contemplation of such a proceeding." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 n.12 (Tex. 2015) (internal quotation marks omitted). Although commonly applied in defamation cases, the privilege prohibits "any tort litigation based on the content of the communication" at issue. *Collins v. Zolnier*, No. 09-17-00418-CV, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied).

ITC argues that its publication of the Report to ITC Fire Plaintiffs is privileged, and, therefore, NSK's business disparagement claim must be dismissed. ECF No. 10 at 12. In response, NSK contends that the publication was not protected because "[j]udicial privilege does not protect ITC's disparaging statements simply because there was underlying litigation arising out of the Deer Park fire." ECF No. 11 at 21. In support of its argument, NSK relies on *Burzynski v. Aetna Life Ins. Co.*, 967 F.2d 1063 (5th Cir. 1992) and *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 405 (5th Cir. 2017). However, both cases are readily distinguishable from the facts presented here. In *Burzynski*, the Fifth Circuit found

the privilege inapplicable because the publication was made to parties whose "relationship to the litigation was hypothetical at best." 967 F.2d at 1068. It reached the same conclusion in *BancPass*, because the "relationship between the third-party recipients and the litigation . . . was attenuated and hypothetical at best." 863 F.3d at 405. In contrast, in this case, there is no question that the communication had more than "some relation to the proceeding." *Id.* at 402. The Report was the result of ITC's investigation into the cause of the ITC Fire, which is the subject of the ITC Fire Plaintiffs' suits against ITC. Therefore, the judicial privilege protects ITC from NSK's business disparagement claim for publishing the Report to the ITC Fire Plaintiffs.

As explained above, NSK's complaint does not provide sufficient detail regarding publication of the Report to governmental entities to allow ITC to respond. This lack of specificity also prevents the Court from evaluating whether absolute privilege protected the publication to governmental entities. Thus, ITC has failed to establish this affirmative defense.[5]

---

[5] Although NSK states that the claims are not based on ITC's publication to the TCEQ, ECF No. 11 at 17-18, that publication would likely be absolutely privileged, *Senior Care Res., Inc. v. OAC Senior Living, LLC*, 442 S.W.3d 504, 512 (Tex. App.—Dallas 2014, no pet.) (citing *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 109, 166 S.W.2d 909, 912 (1942)) (the absolute privilege "extends to quasijudicial proceedings, such as proceedings before executive officers and boards and commissions that exercise quasi-judicial powers."). The TCEQ has broad authority to investigate and regulate excessive air emissions, such as those that resulted from the ITC Fire. *See* Tex. Admin. Code § 101.223. ITC produced the Report to the TCEQ as part of its investigation into the ITC Fire and its' mandatory reporting obligation. *Id.* § 101.223(a)(1)(A). To the extent NSK asserts that the TCEQ's rejection of the Report evidences that it was a sham report that did

Accordingly, judicial privilege protects ITC's publication of the Report to ITC Fire Plaintiffs.

### D. NSK Failed To Plead Special Damages.

Finally, ITC argues that NSK's business disparagement claim fails because the complaint does not plead special damages. ECF No. 10 at 17-19. According to ITC, the only realized losses NSK suffered from the Report's publication are for litigation related expenses, which are not cognizable as special economic damages. *Id.* at 18. NSK responds that it also pleaded special damages in the form of expenses incurred counteracting the damage to its reputation, the strain on its relationship with Applied, potential indemnification of Applied, and NSK has suffered less favorable insurance terms. ECF No. 11 at 23-25. These allegations are not sufficient to plead special damages.

Special damages are a "fundamental element" of a business disparagement claim because the tort is "solely concerned with economic harm." *AHBP LLC v. Lynd Co.*, No. SA-22-CV-00096-XR, 2023 WL 139149, at *17 (W.D. Tex. Jan. 9, 2023) (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014)). To plead special damages, a plaintiff must allege "'pecuniary loss that has been realized or liquidated, such as specific lost sales, loss

---

not meet the reporting requirements, this argument is without merit. The TCEQ recognized that the Report was provided to satisfy ITC's CAP reporting requirement, but that it failed to do so. ECF No. 11 at 20. This finding is not evidence that the Report is a sham.

of trade or loss of other dealings.'" *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *5 (S.D. Tex. Oct. 22, 2020) (quoting *TMIRS Enterprises, Ltd. v. Godaddy.com, Inc.*, CIV. A. H-09-2858, 2010 WL 3063659, at *5 (S.D. Tex. Aug. 3, 2010)). Furthermore "'the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established.'" *Cisco*, 2021 WL 3550515, at *9 (quoting *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987)).

NSK first contends that it satisfied the special damages requirement because it "incurred costs to disprove ITC's claims about the bearing" "associated with claims" the ITC Fire Plaintiffs have asserted. ECF No. 11 at 24-25. In *C.P. Ints., Inc. v. California Pools, Inc.*, the Fifth Circuit found that attorney's fees incurred from bringing a lawsuit for business disparagement "do not establish the element of special damages." 238 F.3d 690, 696 (5th Cir. 2001). Although the litigation costs here, unlike in *California Pools*, are the result of defending as opposed to prosecuting lawsuits, this distinction does not warrant a different result because the Fifth Circuit's opinion was based in part on a Texas Supreme Court's decision concluding that special damages were not satisfied in a malicious prosecution case by "'losses incident to defending a civil suit, such as embarrassment, discovery costs, and attorney's fees.'" *Id.* at 695 (quoting *Texas Beef Cattle Co. v. Green*, 921

S.W.2d 203, 208 (Tex. 1996)). Furthermore, NSK identifies only a single case where expenses from defending against third party suits were found to satisfy the special damages requirement. ECF No. 11 at 24 (citing *Kollenberg v. Ramirez*, 127 Mich.App. 345, 339 N.W.2d 176, 177 (1983)). However, because *Kollenberg* does not address special damages under Texas law, the Court does not find it persuasive.

NSK also relies on *Graham Land & Cattle Co. v. Indep. Bankers Bank*, 205 S.W.3d 21, 30 (Tex. App. 2006, no pet.), for the general proposition that "costs incurred as a result of measures to disprove the statements at issue, as well as costs that will continue to incur, are pecuniary losses that satisfy the special damages requirement." ECF No. 11 at 24 (citing *Graham*, 205 S.W.3d at 30.). NSK overstates the holding. The court found the evidence on summary judgment supported the existence of special damages because the plaintiff suffered pecuniary loss in the form of accounting and inventory costs as a result of the disparaging statement. *Id.* at 30. The *Graham* court did not address attorneys' fees. Moreover, NSK's argument is inconsistent with the Fifth Circuit's holding in *California Pools* based on several Texas Supreme Court cases analyzing special damages in various contexts and holding in each case that attorneys' fees are not sufficient. 238 F.3d at 696. Furthermore, NSK's overbroad interpretation of *Graham* that any costs incurred to disprove allegedly disparaging statements satisfied the special damages requirement vitiates the restrictions on special damages that exist under Texas law. For example,

16

it would remove the requirement that special damage be the result of the disparaging statement "inducing others not to deal with" plaintiffs. *Cisco*, 2021 WL 3550515, at *9 (quoting *Hurlbut*, 749 S.W.2d at 767).

The next category of harm that NSK contends satisfies the special damages requirement is the negative impact of the Report on its relationship with Applied and that it *may* be required to indemnify Applied if Applied were held liable in third party lawsuits related to the ITC Fire. ECF No. 11 at 25. These are not special damages. Whatever damage has been done to NSK's relationship with Applied, it is not the sort of economic harm with which the tort of business disparagement is concerned. *See AHBP*, 2023 WL 139149, at *17. Additionally, whether NSK may have to indemnify Applied is purely speculative and is not a "'pecuniary loss that has been realized or liquidated,'" especially since Applied has been dismissed as a defendant in all of the federal litigation. *Corrosion*, 2020 WL 6202690, at *5 (quoting *TMIRS*, 2010 WL 3063659, at *5).

NSK also attempts to satisfy the special damages requirement through "increased insurance premiums" and "insurance renewals on less favorable terms," resulting from the Report's publication. ECF No. 1 at ¶ 44. Regardless of the merits of this argument, NSK's general allegation that some unnamed insurance carriers increased its premiums an unspecified amount and changed the terms of the agreements in unspecified but less favorable ways, lacks the specificity required to

plead special damages. *Barrash v. Am. Ass'n of Neurological Surgeons, Inc.*, No. 4:13-CV-1054, 2013 WL 4401429, at *4 (S.D. Tex. Aug. 13, 2013) (dismissing business disparagement claim because it failed to allege "special damages with the required specificity" of "identifying any specific sources of economic loss"). Therefore, NSK's allegations regarding its insurance arrangements do not satisfy the special damages requirement.

Accordingly, NSK's business disparagement claim fails to plead special damages.

## IV.   NSK'S CIVIL CONSPIRACY CLAIM IS DISMISSED.

"In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). The essential elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is a "derivative tort," meaning it depends on some underlying tort or other illegal act. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."). Therefore,

because NSK has not met its burden on its underlying claim of business disparagement, its conspiracy claim also fails.

## V.  NSK'S BUSINESS DISPARAGEMENT CLAIM IS DISMISSED WITH PREJUDICE TO THE EXTENT IT IS BASED ON PUBLICATION TO THE ITC FIRE PLAINTIFFS.

Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

NSK did not request leave to amend from the Court in its opposition to ITC's motion to dismiss. Therefore, the Court can only speculate as to how NSK would amend its complaint to address the failings identified here. Further, amendment of NSK's business disparagement claim based on publication to ITC Fire Plaintiffs is futile because that claim is subject to judicial privilege and "not actionable as a matter of law." *Taubenfeld v. Hotels.com*, 385 F. Supp. 587, 592 (N.D. Tex. 2004) (dismissing complaint with prejudice). Therefore, those claims are dismissed with prejudice. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (affirming dismissal with prejudice where plaintiff did not expressly request to amend the complaint and further amendment would be futile).

However, because NSK has not previously amended its complaint, the Court cannot say with certainty that it cannot allege any set of facts sufficient to plead a business disparagement claim based on publication to government entities or others. Therefore, NSK may file an amended complaint on that basis.

**V.    CONCLUSION**

Therefore, it is **ORDERED** that ITC's motion to dismiss NSK's complaint, ECF No. 10, is **GRANTED**. It is further **ORDERED** that NSK's business disparagement claim based on ITC's publication of the Report to ITC Fire Plaintiffs is **DISMISSED WITH PREJUDICE,** NSK's business disparagement claim based on ITC's publication of the Report to government entities is **DISMISSED WITHOUT PREJUDICE**, and NSK's conspiracy claim is **DISMISSED WITHOUT PREJUDICE**. NSK is **GRANTED** leave to amend its complaint within 30 days, consistent with the terms of this Order.

**IT IS SO ORDERED.**

Signed on June 27, 2023, at Houston, Texas.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**